IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ABIODUN SOWEMIMO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 08-cv-664-WDS |
| | ) | |
| MACK BADER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**STIEHL, District Judge:**

Plaintiff, an inmate at the Western Illinois Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] Specifically, Plaintiff seeks damages and injunctive relief for alleged retaliation and denial of his religious rights. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.–** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.–** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

---

[1] At the time Plaintiff submitted his complaint and *in forma pauperis* motion he was confined at the Lawrence Correctional Center. On December 8, 2008, Plaintiff informed the Court that he had been transferred to the Western Illinois Correctional Center.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

Before turning to the allegations of the complaint, however, the Court notes that Plaintiff has not named all the persons against whom he seeks relief as defendants in the caption of his complaint as required by Rule 10(a) of the Federal Rules of Civil Procedure. In reviewing the complaint, the Court has identified the following additional defendants: Randy Stevenson, Pamela Moran, Janis Jokisch, Sherry Benton and Roger E. Walker, Jr. Accordingly, the Clerk will be directed to add these persons as defendants in the Court's docket.

**THE COMPLAINT**

Although this action concerns matters that occurred while Plaintiff was confined at Lawrence Correctional Center (Lawrence), the seeds of the bulk of Plaintiff's claims lay in events that occurred before June 2007 when Plaintiff was transferred to Lawrence. Before being transferred to Lawrence, Plaintiff was confined at Hill Correctional Center (Hill) and Menard Correctional Center (Menard). In March 2001, while confined at Menard, Plaintiff was issued a conduct violation for "giving false information to an employee." Plaintiff was given this conduct violation because he allegedly refused to take a polygraph test. It appears that Plaintiff was going to be given a polygraph test in connection with his claim that he needed to be placed on "Protective Custody" status due to asserted "enemy issues." Because Plaintiff refused to take the polygraph test - after, apparently, agreeing to take it - it appears prison officials considered Plaintiff's claim that he had "enemy issues" to be false. This false information (i.e., that plaintiff had "enemy issues) apparently

2

formed the basis for the conduct violation.

Plaintiff was found guilty of the conduct violation and received the following disciplinary sanctions: demotion to C grade (2 months); segregation (2 months); revoke GCC or SGT (2 months); loss of commissary (2 months); and pay $77.59 in restitution to Menard. The sanctions were upheld during the administrative review process.

In September 2001, Leora Harry, Administrative Review Board Chairperson, reviewed as grievance that Plaintiff had been denied "Protective Custody" status. Ms. Harry determined that Plaintiff had provided "sufficient verifiable information" to warrant Protective Custody. Plaintiff asserts that the conduct violation for giving false information concerning his enemies was expunged.[2] Consequently, Plaintiff contends that he does not owe Menard $77.59 in restitution.

Nevertheless, funds are still being deducted from Plaintiff's inmate account for the repayment of this debt. In addition to the restitution charge, Plaintiff's inmate account is currenlty being debited for three other charges that Plaintiff disputes. Most significantly, the account is being charged $357.02 for library and postage charges Plaintiff allegedly incurred while confined at Hill and Menard. Plaintiff does not allege that this debt is not owed to Hill and Menard. Rather, Plaintiff claims that this debt laid "dormant" for several years and only became "activated" in January 2008, after he asked officials at Lawrence for a transfer to another institution. Plaintiff's request for a transfer from Lawrence was denied by Defendants Bader and Stevenson who claimed that Plaintiff could not be transferred until he had spent one year at Lawrence.

---

[2]The Court notes that Ms. Harry's written recommendation (Exhibit K) does not refer or mention the March 2001 conduct violation for giving false information. Plaintiff, however, appears to allege, however, that the conduct violation was expunged before Ms. Harry's recommendation was made.

3

Plaintiff's inmate account is also currently being debited $12.30 and $0.40 for library charges. Plaintiff's inmate account statement indicates that these charges were incurred on July 23, 2007. Plaintiff, however, contends that he did not use the library facilities at Lawrence on that date and, therefore, contends the charges are fraudulent.[3]

Plaintiff filed an administrative grievance, No. 03-08-075, concerning these charges against his inmate account. An investigation by Defendants Mack and Rohr found the charges proper and, therefore, Plaintiff's grievance was denied by Defendant Moran. On appeal, Defendant Benton affirmed Moran's decision.

Liberally construing the complaint and attached exhibits, Plaintiff claims that Defendants Mack, Rohr, Moran, and Stevenson[4] are "falsifying" his inmate account records and levying these "fraudulent" charges against his account "in retaliation." Plaintiff further charges that Defendant Benton retaliated against him by denying his grievance and failing to properly investigate his fraud claims. Additionally, Plaintiff contends that his account is being kept "in the negative" in retaliation for his prior litigation. That is, he owes more to the State than he has funds in his account. Accordingly, Plaintiff's inmate account is "restricted" and he is unable to buy items from the prison commissary.

---

[3]From Exhibit E attached to the complaint, it appears that prison officials contend that these charges are for copies made by Plaintiff at Hill (not Lawrence). Although it is not entirely clear, it appears that prison officials claim that these charges were incurred before July 23, 2007, but were not posted to Plaintiff's inmate account until that date due to delays in processing.

[4]The Court notes that the complaint asserts that Defendant Stevenson "lied" to Defendant Moran, but there is no allegation that Stevenson had any role in the investigation of these charges. However, Plaintiff has attached copies of his grievances concerning these charges to the complaint. The grievances contain a response from a "counselor." Unfortunately, the exhibit does not identify who the "counselor" was. At this point, it is reasonable to infer that the "counselor" is (or could be) Defendant Stevenson.

On May 20, 2007, while confined at Hill, Plaintiff's cell was searched and two items were seized as contraband: (1) a certificate of deposit and (2) a prayer rug. Plaintiff filed grievances concerning the seizure of these items and, after administrative review, it was determined that Plaintiff's certificate of deposit would be returned to him, but that his prayer rug would not. On October 23, 2007, Sherry Benton, acting for the Administrative Review Board, directed that the certificate of deposit be forwarded to Plaintiff at Lawrence. Ms. Benton also directed that the rug be sent from the Hill Property Unit to the Lawrence Property Unit and that Plaintiff be allowed to dispose of it in accordance with prison regulations. Plaintiff contends that the certificate of deposit has not been returned to him

Plaintiff states that he spoke to Defendant Gatz in January 2008, about being assigned a job at Lawrence. Plaintiff states that Gatz told him: "Don't expect me to give you a job after all you did the problems you gave us at Menard Prison in '97, I was the captain second in command behind Supretendent [sic] Brady in the East cell house in 1997 in Menard prison, you full of shit, and you not getten [sic] back your certificate of deposit, so you can go ahead file a law suit." Plaintiff goes on to state that Brady was a defendant in *Sowemimo v. Hennrich*, No. 98-cv-387-GBC Plaintiff contends that Brady's response "showed retaliat[ion]" against him.

Plaintiff states that he spoke to Defendant Boyd in February 2008, about the charges against his inmate account, the lack of a job assignment, and being housed in a cell block with "gang members that are allied with [his enemies]." Plaintiff states that Boyd told him: "You are a problem, you need to go back to Afrika, [sic] send me a request note and I will get back with you." Plaintiff claims that Defendant Boyd never responded to his issues and, therefore, she showed "prejudice, deliberate indifference and reckless disregard" for them.

5

Plaintiff states that he spoke to Defendant Bader on February 28, 2008, about the charges against his inmate account. Plaintiff states that Bader told him: "You are having all this [sic] problems now cause you keep suing the officials and staff of Illinois Department of Corrections, you need to stop filing civil suits on us so we can stop targeting you, I cannot do anything concerning this. This is above me. If I do anything to correct it I will lose my job, you cannot win litigating against the authorities of Illinois Department of Corrections." Plaintiff claims that Defendant Bader's response "showed retaliat[ion]" towards him.

Plaintiff states that he spoke to Defendant Ryker in March 2008, about his certificate of deposit not being returned to him, the charges against his inmate account, and the lack of a job assignment. Plaintiff states that Ryker told him: "I know who you are, the homophobic guy, you need to stop given [sic] us problems, then I can look into getten [sic] back to you your certificate of deposit and given you a job assignment." Plaintiff goes on to state that "I was told by other prisoners that . . . Ryker is a homosexual." Plaintiff contends that Ryker's response "showed retaliat[ion]" towards him.

Plaintiff states that he spoke to Defendant Hodge in May 2008, about his certificate of deposit not being returned to him and the lack of a job assignment. Plaintiff states that Hodge told him: "I know about you and your issues, you need to stop gaybashing, the internal investigators office from Menard and Hill prison has you on our blacklist, you not getten [sic] back your certificate of deposit, I will not risk my career for you and your issues. Stop homosexual bashing." Plaintiff goes on to state that he has "come to know through other. . . prisoners that . . . Hodge is a homosexual." Plaintiff contends that Hodge's response "showed retaliat[ion]" towards him.

Plaintiff states that he also spoke to Defendant Stevenson about his certificate of deposit not

being returned to him. Plaintiff states that Stevenson told him: "Stop asking me about your certificate of deposit. You are not going to get it back. I will not give you any good time credit because you always filing grievances and suing filing law suits on us the authorities, you need to pay the debt you owe the State I.D.O.C. before I can see what I will do for you, and your [sic] not getten [sic] any job, so stop writing and asking me about that too." Plaintiff contends that Stevenson's response "showed malice and retaliat[ion]" towards him.

Plaintiff alleges that Defendant Jokisch, a records officer, retaliated against him by failing to respond to his letters and request for copies of his master file.

Plaintiff seeks relief against Defendant Walker because, Plaintiff asserts, as Director of the Department of Corrections, "he knew or should have known of the actions of his subordinates" and because he "failed to act or take any preventive action that would have prevented his subordinates from violating Plaintiff's constitutional rights."

Plaintiff claims that Defendants John Does "acted in retaliatory, deliberate and reckless disregard and coverups and criminally when they falsified my prison account statement records."

Finally, Plaintiff asserts that he is being denied his constitutional right to practice his religion. Specifically, Plaintiff alleges that he is being denied his prayer rug and that he is being denied access to the chapel for Islamic prayer services and that he was denied "the right to fast and have food after the daily fast . . . . [during the] holy month of Ramadan."

Based on the allegations of the complaint, the Court finds it convenient to divide Plaintiff's *pro se* action into 11 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Against Defendants Mack, Moran, Rohr, Stevenson, and "John Does" for retaliating against him for filing lawsuits by "fraudulently" charging his inmate account for debts he does not owe in violation of his First Amendment rights.

**COUNT 2:** Against Defendant Benton for retaliating against him for filing lawsuits by denying his grievances concerning the deduction of funds from his inmate account in violation of his First Amendment rights.

**COUNT 3:** Against Defendant Gatz for retaliating against him in January 2008 for a lawsuit Plaintiff filed in 1998 by refusing to address Plaintiff's oral grievance in violation of his First Amendment rights.

**COUNT 4:** Against Defendant Boyd for retaliating against him in February 2008 for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh and racist language - in violation of his First Amendment rights.

**COUNT 5:** Against Defendant Bader for retaliating against him on February 28, 2008, for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh language - in violation of his First Amendment rights.

**COUNT 6:** Against Defendant Ryker for retaliating against him in March 2008 for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh language - in violation of his First Amendment rights.

**COUNT 7:** Against Defendant Hodge for retaliating against him in May 2008 for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh words - in violation of his First Amendment rights.

**COUNT 8:** Against Defendant Stevenson for retaliating against him on an unknown date for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh words - in violation of his First Amendment rights.

**COUNT 9:** Against Defendant Jokisch for retaliating against hin on an unknown date by failing to respond to Plaintiff's letters and written request for copies of his master file.

**COUNT 10:** Against Defendant Walker, Director of the IDOC, because he "knew or should have known" that his subordinates were violating Plaintiff's constitutional rights and he failed to correct them.

**COUNT 11:** Against all Defendants for denying Plaintiff his right to freely exercise his religion by denying him a prayer rug, denying him chapel services, and by failing to accommodate his religious fasting requirements, in violation of

Plaintiff's First Amendment rights.

**DISCUSSION**

It is well settled that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). But not every grievance, lawsuit, or complaint, constitutes protected speech. Speech concerning matters of personal, rather than public, concern is not protected. *McElroy v. Lopac*, 403 U.S. F.3d 855, 858-59 (7th Cir. 2005) (noting constitutionally protected activity must relate to a public concern).

It is also settled that the retaliatory act itself does not have to independently violate the Constitution. *Babcock*, 102 F.3d at 275. For example, prisoners have no protected interest in being housed in a particular prison or particular part of a prison, and, therefore, when a prisoner is transferred to a more restrictive environment it does not rise to the level of a constitutional violation. *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). If, however, the motivating factor in transferring a prisoner to a more restrictive prison is retaliation for a prisoner exercising his First Amendment rights, then the prisoner has a claim under § 1983. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

In Counts 2 through 9, the alleged retaliatory act is the failure to address (or the denial of) Plaintiff's grievances. In general, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to grant a grievance, to ignore it, or to follow their own procedures does not, of itself, violate the

9

Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Without more, Plaintiff's allegations that the Defendants denied or failed to respond to his grievances would not state a constitutional claim.

To bolster his claim concerning the denial of his grievances, Plaintiff casts the Defendants' actions in Counts 2 through 9 as retaliation for Plaintiff's past lawsuits. As noted above, prison officials may not retaliate against inmates for exercising their constitutional rights - including rights to file lawsuits, grievances or otherwise complaining about their conditions of confinement. *Walker v. Thompson*, 288 F.3d 1005; *DeWalt v. Carter*, 224 F.3d 607; *Babcock v. White*, 102 F.3d 267; *Cain v. Lane*, 857 F.2d 1139. Retaliation can take many forms, including, the Court supposes, ignoring or rejecting an inmate's grievances regardless of merit.

The Court, however, does not understand the Constitution as providing a remedy for every slight or petty annoyance that befalls an inmate even if done with retaliatory intent. While the retaliatory act does not have to rise to the level of an independent constitutional violation in order to be actionable under § 1983, it still must rise above the inconsequential or trivial. *Cf. Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006) (in context of a Title VII retaliation claim, only those actions a reasonable employee would have found materially adverse are actionable; petty slights and minor annoyances that often take place at work do not constitute actionable retaliation). Incarceration means that a prisoner's life is controlled by prison officials down to the smallest detail. Minor changes in a prisoner's life lacking a material adverse affect are just part of the unpleasantness of prison life and ought not support a retaliation claim. *Id*. Thus, to state a retaliation claim, the alleged retaliatory act must be something a reasonable inmate would find materially adverse. If the alleged retaliatory act had only a trivial or inconsequential effect, then

there is no retaliation claim.

Based on the foregoing, the Court finds that Count 1 - asserting that Defendants retaliated against him by falsifying records which led to money being taken from Plaintiff's inmate account - survives review under § 1915A and should not be dismissed at this time. The alleged retaliatory act had the following effect: $447.31 in debts are being levied against Plaintiff's inmate account. For a prisoner, this is not an inconsequential or trivial amount. Thus, Count 1 arguably states a retaliation claim.

Additionally, the Court finds that Counts 2, 4, 5, 6, 7, and 8 of the complaint - claiming that the Defendants retaliated against him by failing to address his grievances - survives review under § 1915A and should not be dismissed at this time. The alleged retaliatory acts had the following effect: (1) $447.31 in debts continued to be levied against Plaintiff's inmate account (Counts 2, 4, 5, and 6 ); (2) Plaintiff remained without his certificate of deposit despite Benton's directions (Count 7 and Count 8); and (3) Plaintiff continued to be denied good time credits (Count 8). Given the amount of money involved[5] and the importance of good time credits, refusing to review and correct these on-going actions appears to be more than an inconsequential matter.

The Court further finds that Count 3 of the complaint survives review under § 1915A. In Count 3, Plaintiff claims that Defendant Gatz retaliated against him by refusing to consider his grievance concerning assignment to a prison job. The effect of the retaliatory act appears to be that Plaintiff continued to be incarcerated without a prison job. On the one hand, the fact of incarceration means that Plaintiff's basic needs are met by the State. On the other hand, a prison job means Plaintiff receives prison pay and the ability to buy things that the State does not provide. Indeed,

---

[5]It's not entirely clear, but the certificate of deposit may be in the amount of $2,500.

loss of a prison job or a reduction in prison pay is sometimes used as a sanction for violating prison rules. Thus, prison jobs appear to have some material value. Therefore, the Court will allow Count 3 to go forward at this time.

The Court concludes, however, that Count 9 of the complaint should be dismissed pursuant § 1915A. In Count 9, Plaintiff complains that he did not get copies of his master file from Defendant Jokisch. The effect of the retaliatory act was that Plaintiff did not get his copies. Assuming that Defendant Jokisch ignored Plaintiff's request for copies for retaliatory purposes, the failure to provide Plaintiff with copies of his master file simply does not rise above the trivial or inconsequential. To be sure, Plaintiff may have been annoyed or inconvenienced because Jokisch did not respond to his copy request, but it is extremely difficult (if not impossible) to imagine a scenario where the failure to provide the copies made Plaintiff's situation materially worse - especially since Plaintiff claims the other Defendants were already "falsifying" records and ignoring his grievances in retaliation for his prior lawsuits. Not being provided copies is on par with other petty slights and annoyances that do not rise to the level of a constitutional violation.

The Court finds that Count 10 of the complaint - alleging that Defendant Walker knew that his subordinates were retaliating against Plaintiff for exercising his constitutional rights, but failed to take corrective action - survives review under § 1915A and should not be dismissed at this time.

Finally, Count 11 of the complaint - alleging that " Defendants" are depriving him of his First Amendment right to freely exercise his religion by denying him his prayer rug, chapel services, and religious fasting - survives review under § 1915A and should not be dismissed at this time. The Court liberally construes this Count to be against all Defendants named in the complaint.

**DISPOSITION**

The Clerk is **DIRECTED** to add Randy Stevenson, Pamela Moran, Janis Jokisch, Sherry Benton, Roger E. Walker, Jr., and Mr. Rohr as Defendants in this action.

**IT IS HEREBY ORDERED** that Count 9 of the complaint is **DISMISSED,** with prejudice, pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted. This dismissal counts as a "strike" for purposes of 28 U.S.C. § 1915(g).

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants Bader, Ryker, Boyd, Gatz, Hodge, Stevenson, Moran, Jokisch, Benton, Walker, and Rohr. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants Defendants Bader, Ryker, Boyd, Gatz, Hodge, Stevenson, Moran, Jokisch, Benton, Walker, and Rohr in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name on a USM-285 form and in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of Illinois Department of Corrections who no longer can

be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to

defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED: February 10, 2009.**

<u>s/ WILLIAM D. STIEHL</u>
**DISTRICT JUDGE**