IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ABIODUN SOWEMIMO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. **08-664-JPG** |
| | ) | |
| **MACK BADER, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**PROUD, Magistrate Judge:**

Defendants Mark Bader, Sherry Benton, Christine Boyd, Donald Gaetz, Marc Hodge, Janis Jokisch, Pamela Moran, John Rohr, Lee Ryker, Randy Stevenson and Roger E. Walker, Jr.[1], are before the Court seeking summary judgment on all remaining claims, Counts 1-8 and 10-11. **(Doc. 38.)** The defendants argue that plaintiff Abiodun Sowemimo[2] has failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). The defendants have filed a memorandum in support of their position **(Doc. 39)**; plaintiff has filed a memorandum in opposition **(Doc. 44)**, to which defendants filed a reply **(Doc. 46)**; and an evidentiary hearing was conducted. This resulting Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] The defendants' full, correctly spelled names are used by the Court, rather than the names as they appear in the complaint and on the docket.

[2] The Court will spell plaintiff's name the way it appears in the caption of the complaint and as plaintiff's signature appears on the complaint, rather than how plaintiff printed and signed his name on various grievances, and how plaintiff's name is spelled by the Illinois Department of Corrections.

1

## The Claims

As summarized in the Court's threshold order, the remaining claims are as follows:

**COUNT 1:** Against Defendants Mack, Moran, Rohr, Stevenson, and "John Does" for retaliating against him for filing lawsuits by "fraudulently" charging his inmate account for debts he does not owe in violation of his First Amendment rights.

**COUNT 2:** Against Defendant Benton for retaliating against him for filing lawsuits by denying his grievances concerning the deduction of funds from his inmate account in violation of his First Amendment rights.

**COUNT 3:** Against Defendant Gatz for retaliating against him in January 2008 for a lawsuit Plaintiff filed in 1998 by refusing to address Plaintiff's oral grievance in violation of his First Amendment rights.

**COUNT 4:** Against Defendant Boyd for retaliating against him in February 2008 for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh and racist language - in violation of his First Amendment rights.

**COUNT 5:** Against Defendant Bader for retaliating against him on February 28, 2008, for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh language - in violation of his First Amendment rights.

**COUNT 6:** Against Defendant Ryker for retaliating against him in March 2008 for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh language - in violation of his First Amendment rights.

**COUNT 7:** Against Defendant Hodge for retaliating against him in May 2008 for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh words - in violation of his First Amendment rights.

**COUNT 8:** Against Defendant Stevenson for retaliating against him on an unknown date for prior lawsuits by refusing to address Plaintiff's oral grievance - and by using harsh words - in violation of his First Amendment rights.

      **COUNT 10:**   Against Defendant Walker, Director of the IDOC, because he "knew or should have known" that his subordinates were violating Plaintiff's constitutional rights and he failed to correct them.

      **COUNT 11:**   Against all Defendants for denying Plaintiff his right to freely exercise his religion by denying him a prayer rug, denying him chapel services, and by failing to accommodate his religious fasting requirements, in violation of Plaintiff's First Amendment rights.

**(Doc. 6, pp. 8-9;** *see also* **Doc. 1.)**

### The Arguments Presented

The defendants argue that plaintiff failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). **(Docs. 38 and 39.)** Put succinctly, they contend that no grievance naming them and concerning the issues in this case was pursued through the full administrative process. The defendants support their position with the affidavit of (defendant) Sherry T. Benton, Chairperson of the Illinois Department of Corrections Administrative Review Board ("ARB"). **(Doc. 39-1.)** According to Benton, a review of ARB records was performed for grievances naming the defendants and mentioning retaliation, Director Walker's failure to correct his subordinates from violating plaintiff's constitutional rights, or the denial of plaintiff's free exercise of his religion at Lawrence Correctional Center. The search did not uncover any exhausted grievance meeting the aforementioned criteria.

Plaintiff counters by submitting documentation and asserting that he exhausted grievances concerning the confiscation of his prayer rug and "false restitutions," and he attempted to exhaust grievances regarding access to religious services and the denial of post-fast meals during Ramadan, but was impeded by prison officials. **(Docs. 44 and 44-1.)**

**The Exhaustion Requirement**

Plaintiff's claims are subject to the exhaustion requirement set forth in 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir.1999), clarified that exhaustion of administrative remedies under Section 1997e(a)– while not jurisdictional *per se*– is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. The exhaustion requirement applies to all claims "about prison life." ***Porter v. Nussle,* 534 U.S. 516, 532 (2002).**

Significantly, exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. ***See* 42 U.S.C. § 1997e(a);** *Perez,* **182 F.3d at 535-536.** In other words, an inmate cannot file suit and then exhaust his administrative remedies while suit is pending. ***Ford v. Johnson,* 362 F.3d 395, 398 (7th Cir. 2004).**

The Supreme Court has held that exhaustion means "proper exhaustion," that is, the inmate must file a timely grievance using the procedures put in place by the prison system, properly taking each step in the process. ***Woodford v. Ngo,* 548 U.S. 81 (2006);** *Pozo v. McCaughtry,* **286 F.3d 1022, 1024 (7th Cir. 2002).** The law of the Seventh Circuit emphasizes that the purpose of exhaustion is to give prison officials an opportunity to address the inmate's

claims administratively/internally, prior to federal litigation.  *See, e.g., Kaba v. Stepp,* **458 F.3d 678, 684 (7th Cir. 2006);** *Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006);** *see also  Porter v. Nussle,* **534 U.S. 516, 524-525(2002).**

Illinois Department of Corrections regulations regarding the procedures inmates must follow are set forth in the Illinois Administrative Code (20 Ill.Admin.Code § 504.810 *et seq*. (effective May 1, 2003, through all times relevant to this case); *see also* Doc. 39-1, p. 1).  Those procedures first require an inmate to attempt to resolve grievances through his counselor.  **20 Ill. Admin. Code § 504.810(a).**  If that step is unsuccessful, the inmate may file a written grievance on a specified form within 60 days of discovery of the incident or problem giving rise to the grievance unless good cause can be shown for extending that period.  *Id.*  The grievance form must be addressed to the grievance officer and "deposited in the living unit mailbox or other designated repository." **20 Ill. Admin. Code § 504.810(b).**  The grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."  *Id.; contra Santiago v. Walls*, **No. 07-1219, at *8 , 2010 WL 1170654 (7th Cir. March 29, 2010) ("With respect to the grievance, neither this court nor any American court has imposed the requirement of fact or code pleading on such a document.  The purpose of a grievance is, quite simply, to advise prison management of a situation that could harm the good order and discipline of the institution so that remedial steps can be taken by the officer who is responsible for such remedies.")**

The grievance officer provides the initial review of grievances.  **20 Ill. Admin. Code § 504.830(a).**  If the grievance is found to have no merit, the regulations (20 Ill. Admin. Code §

504.830(d)) direct the grievance officer to consider the grievance and report findings and recommendations to the highest ranking official of a correctional facility, i.e. the warden. **20 Ill. Admin. Code § 504.802.** The warden then advises the inmate of his or her decision within two months where reasonably feasible. **20 Ill. Admin. Code § 504.830(d).**

If the inmate is not satisfied with the warden's decision, he may appeal in writing to the director of the Illinois Department of Corrections within 30 days. **20 Ill. Admin. Code § 504.850(a).** After reviewing the grievance and the responses by the grievance officer and the warden, the director decides whether the grievance: (a) requires a hearing before the Administrative Review Board ("ARB"); (b) is without merit; or (c) can be resolved without a hearing. **20 Ill. Admin. Code § 504.850(b).** If the grievance proceeds to a hearing, the ARB submits a written report to the director who reviews the findings and recommendations of the ARB and makes a final determination within six months. **20 Ill. Admin. Code § 504.850(b)-(f).**

Failure to exhaust administrative remedies is an affirmative defense; the defendant correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006);** *Dale v. Lappin,* **376 F.3d 652, 655 (7th Cir. 2004).** A remedy is "available" if the administrative procedure can lead to some relief, even if it is not the precise relief the inmate wants. *See Booth v. Churner,* **532 U.S. 731, 741 and f n. 6 (2001);** *Larkin v. Galloway,* **266 F.3d 718, 723 (7th Cir. 2001).** "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing** *Lewis v. Washington,* **300 F.3d**

**829, 833 (7ᵗʰ Cir. 2002); and** *Dale v. Lappin,* **376 F.3d 652, 656 (7ᵗʰ Cir. 2004).**

In *Pavey v. Conley,* 544 F.3d 739 (7ᵗʰ Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

Summary judgment is appropriate if the evidence shows that "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Greeno v. Daley,* **414 F.3d 645, 652 (7ᵗʰ Cir. 2005).** Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather, they must "establish affirmatively" that the evidence is so one-sided that no reasonable fact-finder could find that plaintiff exhausted or was prevented from exhausting his administrative remedies. *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.,* **971 F.2d 37, 42 (7ᵗʰ Cir. 1992);** *see Branham v. Snow,* **392 F.3d 896, 906-907 (7ᵗʰ Cir. 2004).** A litigant's affidavit, based on personal knowledge, is sufficient to create a factual dispute. *See*

7

*Holmes v. Village of Hoffman Estates,* **511 F.3d 673, 680 (7th Cir. 2007).**  However, the submission of additional evidence may, of course, be determinative in a situation that would otherwise be a "swearing contest" of affidavits.

### Proposed Findings of Fact

On May 20, 2007, while confined at Hill Correctional Center, plaintiff's cell was searched and a certificate of deposit and a prayer rug were confiscated.  Plaintiff filed a grievance on June 3, 2007, regarding the certificate of deposit, and alleging retaliation.  **(Doc. 1, pp. 33-34.)**  In response, plaintiff's counselor and a grievance officer addressed the confiscation of the certificate of deposit and the prayer rug, but retaliation was not mentioned.  **(Doc. 1, pp. 33 and 35.)**  On July 10, 2007, the warden concurred with the denial of the grievance.  **(Doc. 1, p. 35.)**  Plaintiff appealed the decision to the ARB, and on October 23, 2007, defendants Sherry Benton of the ARB and IDOC Director Roger E. Walker, Jr., concurred in the final decision to return the certificate of deposit to plaintiff, but keep the prayer rug as contraband.  **(Doc. 1, pp. 35-36.)**  At the May 7, 2010, evidentiary hearing the defendants did not dispute the aforementioned documentation.

In mid-July 2007 plaintiff was transferred to Lawrence Correctional Center.  When plaintiff reviewed his Trust Fund statement for the month of July he took issue with two charges, one for 40¢ and one for $12.30, allegedly incurred at Hill Correctional Center. **(Doc. 1, p. 37.)**  Plaintiff filed a grievance on August 5, 2007.  **(Doc. 1, p. 38; Doc. 44-1, p. 4.)**  Plaintiff's counselor responded that the charges were for copies made at Hill.  *Id.*  Six months later, on February 17, 2008, plaintiff field a grievance regarding the aforementioned charges to his account totaling $12.70, another 17¢ charge, and also protesting a $78.00 "involuntary

8

restitution" charge to his account in August 2007.[3] **(Doc. 1, pp. 40-42 and 44.)** Plaintiff asserted that the restitution charge had been expunged in 2001. **(Doc. 1, pp. 40-42.)** On April 29, 2008, defendant grievance officer Pamela Moran addressed multiple disputed restitution charges: (1) $357.02 owed to Hill and Menard Correctional Centers; (2) $78.00 owed to Menard since 2001; and (3) $12.30 and 17¢ owed since July 2007 to Hill. **(Doc. 1, p. 43; Doc. 44-1, p. 6.)** The grievance officer cited a report by defendant Bader, the Business Office Administrator, indicating that plaintiff owed $357.02 for old postage and copying fees incurred at Menard and Hill; two involuntary restitution charges from 2001 for $77.59 and $49.15, which had not been expunged[4]; and five court-ordered restitution charges totaling $569.05. **(Doc. 1, p. 43; Doc. 44-1, p. 6.)** Grievance Officer Moran denied plaintiff's grievance, and the warden concurred. **(Doc. 1, p. 43.)** In July 2008, defendant ARB Chairperson Benton and defendant IDOC Director Walker affirmed the decision to deny plaintiff's grievance regarding the charges to his account. **(Doc. 1, p. 47; Doc. 44-1, p. 7.)**

On July 18, 2008, plaintiff filed a grievance alleging that guards failed to let him out of his cell to attend Islamic services on July 14 and 18, 2008, as part of an ongoing pattern of annoyance and oppression by officials at Lawrence Correctional Center. **(Doc. 44-1, pp. 8-9.)** On July 23, 2008, defendant Warden Ryker declined to deem the incident an "emergency," and returned the grievance to plaintiff. **(Doc. 44-1, p. 8.)** Plaintiff then commenced the usual

---

[3]The involuntary restitution charge appears to be $76.10. **(Doc. 1, p. 40.)**

[4]Plaintiff argues that the $77.59 restitution amount relates to a 2001 polygraph test in connection with a disciplinary charge that was expunged. **(Doc. 1, p. 45.)** Plaintiff submits an ARB decision in his favor regarding allowing plaintiff to remain in protective custody, but the ARB report makes no mention of expunging the disciplinary charge or restitution. **(Doc. 1, p. 46.)**

9

process by submitting the grievance to his counselor on or about July 28, 2008. **(Doc. 44-1, p. 8.)** Three months later, on October 28, 2008 (after this case was initiated), the grievance was denied by plaintiff's counselor. **(Doc. 44-1, p. 8.)**

Another grievance was filed on September 3, 2008, indicating that the aforementioned July 18, 2008 , grievance and another similar grievance filed July 27, 2008, had not been responded to by plaintiff's counselor.[5] **(Doc. 44-1, pp. 10-11.)** Plaintiff complained about not being permitted to attend Islamic services and not being fed at the conclusion of the daily fasting period during Ramadan because he is "not on the list." *Id.* On September 4, 2008, defendant Warden Ryker declined to deem the September 3, 2008, grievance an "emergency"– meaning that the usual process should be used, commencing with plaintiff's counselor. **(Doc. 44-1, p. 10).** On or about September 4, 2008, plaintiff submitted a grievance to his counselor that was virtually identical to the one lodged on September 3, 2008. **(Doc. 44-1, pp. 13-14 (referenced as Grievance #10-08-055).)** The counselor replied to the grievance on September 25, 2008 (after the complaint had been filed). **(Doc. 44-1, p. 13.)** That grievance was subsequently denied by a grievance officer and the warden on December 5, 2008. **(Doc. 44-1, p. 12.)**

On September 23, 2008, while plaintiff's July 18 and September 4 grievances were pending with plaintiff's counselor, the complaint initiating this Section 1983 action was filed. **(Doc. 1.)** In December 2008, defendant Grievance Officer Moran and Warden Ryker both concluded that the September 4, 2008 grievance should be denied, as plaintiff had been removed

---

[5]Based on the dates noted on the documentation, the July 27 grievance reference by plaintiff is merely the re-submission of the July 18 grievance through the full administrative process, after it had been deemed a non-emergency. In order to avoid confusion, hereafter the Court will only reference the July 18 grievance.

from "the list" for non-attendance, but had been put back on "the list" on September 15, 2008. **(Doc. 44-1, p. 12.)** According to plaintiff, on December 11, 2008, he appealed the denial of his grievance to the ARB, but never received a response. **(Doc. 44, p. 3.)**

The affidavit of defendant Sherry Benton, in her capacity as Chairperson of the ARB, states that she conducted a search of ARB records "for grievances [plaintiff] filed regarding his incarceration at Lawrence Correctional Center, from June 26, 2007 to December 3, 2008," naming any of the defendants, and/or regarding retaliation, Director Walker's failure to correct subordinates from violating plaintiff's constitutional rights, and/or the denial of plaintiff's right to freely exercise his religion during his incarceration at Lawrence Correctional Center. **(Doc. 39-1, p. 2.)** No corresponding records were found of plaintiff exhausting administrative remedies. *Id.*

It is undisputed that no other grievances were lodged by plaintiff.

### Analysis and Proposed Conclusions of Law

#### Count 1

Count 1 alleges that defendants Mack, Moran, Rohr, Stevenson, and "John Does" retaliated against plaintiff for filing lawsuits by fraudulently charging his inmate account for debts he does not owe. In response to plaintiff's February 17, 2008, grievance prison officials broadly reviewed the charges to plaintiff's Trust Fund Account, and that issue was presented to the ARB. Nevertheless, no allegation or hint of retaliation was included in plaintiff's grievance, nor was retaliation addressed *sua sponte* by the ARB; and defendants Mack, Moran, Rohr and

11

Stevenson were not mentioned in the grievance.[6]  Therefore, plaintiff has failed to exhaust administrative remedies relative to Count 1.

### Counts 2-8

Counts 2-8, each allege a specified defendant retaliated against plaintiff by denying a grievance or failing to address a grievance.  There is no evidence that plaintiff initiated any grievances about these claims.  Therefore, plaintiff has clearly failed to satisfy the exhaustion requirement relative to Counts 2-9.

### Count 10

Count 10 alleges that Roger E. Walker, Jr., as Director of the IDOC, knew or should have known that his subordinates were violating plaintiff's constitutional rights and failed to intervene.  It is undisputed that no grievance making such allegations about Walker was ever initiated.  Any knowledge of the underlying alleged violations imputed to Walker via his involvement with other grievances is insufficient, in that prison officials would not be alerted to the fact that plaintiff was taking issue with Walker's own action or inaction.  Therefore, plaintiff has failed to exhaust administrative grievances relative to Count 10.

### Count 11

---

[6]Although an inmate's grievance does not have to plead a legal claim as one would in filing suit, to establish a claim of retaliation for exercising free speech, an inmate must allege a chronology of events from which retaliation can be inferred, and prove both that his grievances were the motivating factor behind the defendant's conduct and that things would have transpired differently absent the retaliatory motive. ***Hasan v. Department of Labor,* 400 F.3d 1001, 1005 (7th Cir. 2005); *Babcock v. White,*** 102 F.3d 267, 275 (7th Cir. 1996).  Absent any indication in the grievance that the charges were being collected out of retaliation, prison officials would not be alerted to any improper motivation for the charges.

Count 11 alleges that all defendants denied plaintiff his right to freely exercise his religion by confiscating his prayer rug, denying him access to Islamic chapel services, and by failing to provide post-fast meals during Ramadan.

Relative to the confiscation of plaintiff's prayer rug, a grievance was filed in June 2007 and pursued through the complete administrative process.[7] However, the grievance identified various guards at Hill Correctional Center who had been involved in the confiscation, none of whom are defendants in this action. (*See* **Doc. 1, pp. 1-3.**) Although defendants Benton and Walker were involved with ruling on the administrative appeal of plaintiff's grievance, they were not the subject of the grievance.

On July 18, 2008, plaintiff filed a grievance regarding being denied access to Islamic services, but when he did not receive a prompt reply from his counselor, he pursued another grievance in September 2008, indicating the initial grievance had gone unanswered. Two weeks later, on September 19, 2008, plaintiff signed the complaint, which was filed by the Clerk of Court on September 23, 2008. (**Doc. 1, p. 51.**) Plaintiff's counselor did not reply to his grievance until October 28, 2008--three months after it was submitted.

An inmate must file a "formal" grievance with his grievance officer within 60 days of discovery of the incident or problem giving rise to the grievance. Plaintiff's counselor's unexplained delay in responding to the "informal" grievance would appear to render the administrative remedy unavailable, since the "informal" grievance is a prerequisite to the "formal" grievance. Although there is no prescribed deadline for a counselor to act on an

---

[7]As previously noted, the grievance did not actually mention the confiscation of the rug, but prison officials specifically addressed the rug.

"informal" grievance, it is axiomatic that the counselor should act in less than 60 days, so the inmate could file a "formal" grievance by the 60th day. Plaintiff's complaint was filed September 23, 2008– less than 60 days after the submission of the grievance to the counselor on July 28, 2008.[8] At the time plaintiff initiated his lawsuit, he had no way of knowing that the counselor would not act on the "informal" grievance before the deadline for filing a "formal" grievance. Therefore, insofar as the grievances initiated on September 3 and 4, 2008, pertained to denial of access to Islamic services, the process was not completed before plaintiff filed suit.

Similarly, this lawsuit was filed on September 23, 2008– well before any conceivable deadline for acting on the September 4, 2008, grievance could pass. The grievance filed on September 4, 2008, pertained to access to Islamic services <u>and</u> to the denial of post-fast meals during Ramadan, which was a new issue. Regardless of whether plaintiff did or did not appeal the denial of his grievance to the ARB in December 2008, and regardless of whether he ever received a response from the ARB, plaintiff filed suit before the administrative remedy process was "unavailable," and before it was completed. Therefore, plaintiff did not exhaust administrative remedies relative to the issue of post-fast meals before filing suit. Consequently, plaintiff has failed to exhaust administrative grievances relative to any of the issues raised in Count 11.

## **Recommendation**

For the aforestated reasons, it is the recommendation of the undersigned Magistrate

---

[8]Even if plaintiff submitted the grievance on July 27, 2008 (as suggested by the grievance lodged on September 3 and 4, 2008), the complaint was still filed before the 60-day period ran out.

Judge that the defendants' motion for summary judgment (Doc. 38) be granted in all respects due to plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). If the Court adopts the recommendation, Counts 1-8 and 10-11 would be dismissed without prejudice, and at that juncture entry of final judgment in this action would be appropriate.

**DATED: May 11, 2010**

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **U. S. MAGISTRATE JUDGE**

**Notice of Response Deadline**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(d), the parties shall file (meaning receipt by the Clerk of Court) any objections to this report and recommendation on or before **May 28, 2010**. No extensions will be granted.